**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., EILEEN P. DRAKE, KEVIN P. CHILTON, THOMAS A. CORCORAN, JAMES R. HENDERSON, WARREN G. LICHTENSTEIN, LANCE W. LORD, AUDREY McNIFF and MARTIN TURCHIN,<br><br>Defendants. | **Case No.:**<br><br>**CLASS ACTION**<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Richard Myers ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Aerojet Rocketdyne Holdings, Inc ("Aerojet Rocketdyne" or the "Company"), against Aerojet Rocketdyne, the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with Aerojet Rocketdyne and the Individual Defendants,

- 1 -
CLASS ACTION COMPLAINT

the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Lockheed Martin Corporation ("Parent"), and Mizar Sub, Inc., ("Merger Sub," and collectively with Parent, "Lockheed Martin ") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $5 billion (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a December 20, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Lockheed Martin acquire all of the outstanding shares of Aerojet Rocketdyne's common stock at a price of $56 per share in cash.  As a result of the Proposed Transaction, Aerojet Rocketdyne stockholders will be frozen out of any interest in the surviving entity.

3.     Thereafter, on January 25, 2021, Aerojet Rocketdyne filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient process in which the Board acquiesced to Lockheed Martin's low price bid without fielding indications of interest from other potentially interested third parties.

5.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Aerojet Rocketdyne without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Lockheed Martin without regard for Aerojet Rocketdyne public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Aerojet Rocketdyne stockholders.

CLASS ACTION COMPLAINT

6. Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7. In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on January 25, 2021 with the SEC in an effort to solicit stockholders to vote their Aerojet Rocketdyne shares in favor of the Proposed Transaction. The Preliminary Proxy is materially deficient, deprives Aerojet Rocketdyne's stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties. As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aerojet Rocketdyne, provided by Aerojet Rocketdyne to the Company's financial advisors, Citi Global Markets, Inc. ("Citi") and Evercore Group L.L.C. ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and Evercore and provided to the Company and the Board.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of law by Defendants.

CLASS ACTION COMPLAINT

**PARTIES**

9. Plaintiff is a citizen of Illinois and, at all times relevant hereto, has been an Aerojet Rocketdyne stockholder.

10. Defendant Aerojet Rocketdyne is a world-recognized aerospace and defense leader that provides propulsion systems and energetics to the space, missile defense and strategic systems, and tactical systems areas, in support of domestic and international customers. Aerojet Rocketdyne is incorporated under the laws of the State of Delaware and has its principal place of business at 222 N. Pacific Coast Highway, Suite 500, El Segundo, CA.  Shares of Aerojet Rocketdyne common stock are traded on the NasdaqGS under the symbol "AJRD."

11. Defendant Eileen P. Drake ("Drake") has been a Director of the Company at all relevant times.  In addition, Drake serves as the Company's President and Chief Executive Officer ("CEO").

12. Defendant Kevin P. Chilton ("Chilton") has been a director of the Company at all relevant times.

13. Defendant Thomas A. Corcoran ("Corcoran") has been a director of the Company at all relevant times.

14. Defendant James R. Henderson ("Henderson") has been a director of the Company at all relevant times.

15. Defendant Warren G. Lichtenstein ("Lichtenstein") has been a director of the Company at all relevant times. In addition, Lichtenstein serves as the Company's Chairman of the Board.

16. Defendant Lance W. Lord ("Lord") has been a director of the Company at all relevant times.

17. Defendant Audrey McNiff ("McNiff") has been a director of the Company at all relevant times.

18. Defendant Martin Turchin ("Turchin") has been a director of the Company at all relevant times.

CLASS ACTION COMPLAINT

19. Defendants identified in ¶¶ 11-18 are collectively referred to as the "Individual Defendants."

20. Non-Defendant Lockheed Martin is an American aerospace, defense, arms, security, and advanced technologies company with worldwide interests. Lockheed Martin Corporation was founded in 1912 and is headquartered in Bethesda, Maryland. Lockheed Martin common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "LMT."

21. Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Aerojet Rocketdyne has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Aerojet Rocketdyne common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically

excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. According to Company's most recently filed 10-Q prior to the announcement of the Proposed Transaction, as of October 20, 2020, there were over 77 million shares of Aerojet Rocketdyne common stock outstanding. The actual number of public stockholders of Aerojet Rocketdyne will be ascertained through discovery;

b. There are questions of law and fact which are common to the Class, including *inter alia*, the following:

   i.   Whether Defendants have violated the federal securities laws;

   ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

   iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Aerojet Rocketdyne and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of Aerojet Rocketdyne, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Aerojet Rocketdyne to engage in the practices complained of herein.

29.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the Company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the Company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

CLASS ACTION COMPLAINT

f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Aerojet Rocketdyne, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Aerojet Rocketdyne, Plaintiff and the other public stockholders of Aerojet Rocketdyne, including their duties of loyalty, good faith, and due care.

32.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Aerojet Rocketdyne common stock in the Proposed Transaction.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

*Company Background*

33.   Aerojet Rocketdyne designs, develops, manufactures, and sells aerospace and defense products and systems in the United States. The Company was founded in 1915 and is headquartered in El Segundo, California.

34.   The Company operates through two segments, Aerospace and Defense, and Real Estate. The Aerospace and Defense segment offers aerospace and defense products and systems

CLASS ACTION COMPLAINT

for the United States government, including the Department of Defense, the National Aeronautics and Space Administration, and aerospace and defense prime contractors. This segment provides liquid and solid rocket propulsion systems, air-breathing hypersonic engines, and electric power and propulsion systems for space, defense, civil, and commercial applications; and armament systems. The Real Estate segment engages in the re-zoning, entitlement, sale, and leasing of the company's excess real estate assets. It owns approximately 11,394 acres of land adjacent to the United States Highway 50 between Rancho Cordova and Folsom, California east of Sacramento.

35. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in an October 26, 2020 press release announcing its 2020 Q3 financial results, the Company highlighted such milestones as total Net Sales for the third quarter of 2020 were $527.7 million compared with $48.1 million for the same period in 2019, a decrease in net loss, and a decrease in operating expenses.

36. Speaking on these positive results, CEO Defendant Drake, commented on the Company's positive financial results as follows, "'We continued our strong momentum in top line growth in the third quarter with sales of $528 million, up 10% from a year ago. On a year-to-date basis, sales were up 4%... The growth was driven by the GMLRS and MRBM programs in the defense business and the RS-25 program in the space business. EBITDAP margin in the quarter was 11.8% and year-to-date was 13.3%. We've had strong cash generation in 2020 with year-to-date free cash flow of $108 million, up 34% from the first nine months of 2019.'"

37. Defendant Drake continued in the October 26, 2020 Press Release regarding the awarding of a crucial contract and future developments for the Company, "'In addition to the growth we're seeing on our existing programs, I'm very excited about the announcement during the quarter that Northrop Grumman was awarded the contract for the Engineering and Manufacturing Development ("EMD") phase of the Ground Based Strategic Deterrent ("GBSD") program,' continued Drake. 'As a key member of their nationwide team, we will be developing a large solid rocket motor and the post-boost propulsion for this critical program. Our

CLASS ACTION COMPLAINT

strong backlog position of $6.7 billion, which is up 49% from the third quarter a year ago, is not yet reflective of our EMD contracts from Northrop Grumman on GBSD which we expect to have signed in the near-term. We're well-positioned to execute on this important new program and continue to focus on making improvements that we expect will generate current and future operational successes.'"

38.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Aerojet Rocketdyne.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

39.    Despite this upward trajectory and increasing financial results, the Individual Defendants have caused Aerojet Rocketdyne to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

40.    As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Lockheed Martin.

41.    First, it is clear from the Preliminary Proxy that the Board determined, after a sales process lasting approximately nine months, that the Company valued itself with a floor price of $60.00 per share.  This fact was reiterated to Lockheed Martin in response to its "best and final" price of $56.00 per share offered in September 2020.  However, despite spending months telling Lockheed Martin that the Board was not prepared to go below $60.00 per share, the Board acquiesced to the $56.00 per share price, without ever fielding indications of interest from any potentially interested third party.

42.    Specifically, while the Preliminary Proxy indicates that the Board discussed four other potentially interested counterparties and their "fit" level for Aerojet Rocketdyne in a potential

CLASS ACTION COMPLAINT

strategic transaction, the Preliminary Proxy does disclose if all of these entities were invited to participate in the sales process. In addition the Preliminary Proxy makes no mention of a general market check for other potentially interested third parties being conducted by the Board or either of its financial advisors.

43. Next the Preliminary Proxy indicates that no committee of independent directors was created to run the sales process.

44. The Preliminary Proxy fails to disclose if Aerojet Rocketdyne entered into any confidentiality agreements with any other party besides Lockheed Martin relating to the sales process, and if so, whether the terms of that agreement differed from the one with Lockheed Martin, and in what way.

45. Moreover, the Preliminary Proxy fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Lockheed Martin, would fall away.

46. The Preliminary Proxy also fails to properly explain why the retention of multiple financial advisors was necessary, given that both Citi and Evercore will receive $15 million apiece for their services related to the Proposed Transaction.

47. Furthermore, the Preliminary Proxy references at least two other unnamed financial advisors that consulted with the Board during the sales process, but fails to disclose their identity, does indicate their specific role in the sales process, and does not indicate how much each was paid in compensation for its services throughout the sales process.

48. Finally, the Preliminary Proxy references that Defendant McNiff was added as a director to the Company Board during the sales process after the Company increased its Board from seven to eight members in August of 2020, but does not disclose adequate information on the background of this decision or Defendant McNiff's appointment, including whether it was the result of an agreement with an activist shareholder, and if McNiff's appointment had an effect on the ongoing sales process, and if so, the nature of that effect.

CLASS ACTION COMPLAINT

49. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

On December 20, 2020, Aerojet Rocketdyne issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

**EL SEGUNDO, Calif., Dec. 20, 2020** (GLOBE NEWSWIRE) — Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.

Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately 42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing.

"We are pleased to bring together our complementary companies in a transformative transaction that will provide premium cash value for our stockholders and tremendous benefits for our employees, customers and partners," said Eileen P. Drake, CEO and President of Aerojet Rocketdyne. "Joining Lockheed Martin is a testament to the world-class organization and team we've built and represents a natural next phase of our evolution. As part of Lockheed Martin, we will bring our advanced technologies together with their substantial expertise and resources to accelerate our shared purpose: enabling the defense of our nation and space exploration. On behalf of the Aerojet Rocketdyne Board and management team, I'd like to thank all of our employees for their unwavering dedication and focus in helping us achieve this great milestone."

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to allow for a seamless integration and ensure continuity for customers, employees and other stakeholders.

CLASS ACTION COMPLAINT

*The Inadequate Merger Consideration*

50.     Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Lockheed Martin establish the inadequacy of the merger consideration.

51.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  For example, the deal consideration is below the 52-week high of $57.27 for the Company's shares. The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration the Company's future financial success with its already crucial line of products to the military.

52.     To be more specific, A May 1, 2020 *Forbes* article explains the Company's significance in the U.S. Defense Supply Chain, "Aerojet has a wider array of competencies in its chosen market segment than any other U.S. player. Aerojet doesn't just make solid and liquid-fuel rocket engines, it also makes air-breathing (ramjet) hypersonic propulsion systems and electric drive for maneuvering spacecraft in orbit. And it makes its propulsion systems in every conceivable size, from the giant RS-25 engines being used on NASA's Space Launch System (the largest launch vehicle ever built) to the small divert-and-attitude-control systems that adjust interceptor maneuvers in flight so they can hit and destroy fast-moving threats without requiring an explosive warhead… But what virtually all of its products have in common, even when they are sold to civil or commercial customers, is that they are critical to national security."

53.     Additionally, the Proposed Transaction represents a significant synergistic benefit to Lockheed Martin, which operates in the same industry as Aerojet Rocketdyne, and will use the new portfolio, operational capabilities, and brand capital to bolster its own position in the market.

54.     Specifically, *CNBC*'s December 21, 2020 article on the Proposed Transaction pointed out Lockheed Martin's strategic play in purchasing the Company, "'Near term, the benefit for Lockheed Martin is on the defense side … and then you're buying some optionality in the space markets down the road, to ideally get more competitive and defend your position,' Canaccord Genuity analyst Ken Herbert told CNBC. Lockheed Martin is Aerojet's largest customer, making

CLASS ACTION COMPLAINT

up about 33% of its sales. United Launch Alliance, or ULA, makes up another 10% of Aerojet's sales – a further complement to Lockheed Martin, which owns a 50% stake in ULA as a joint venture with Boeing. 'This is clearly a vertical integration play for [Lockheed Martin] and a larger investment on Space. The acquisition should complement their space launch business at United Launch Alliance, boost their capabilities in hypersonic propulsion and could have an impact on their battle field and tactical missile business,' Bank of America analyst Ron Epstein wrote in a note to investors on Monday. Herbert also pointed to the benefits of vertical integration as a catalyst for Lockheed Martin acquiring Aerojet Rocketdyne. While aerospace companies historically have wide networks of suppliers, Herbert pointed out that SpaceX and Blue Origin have had success with building as much as possible in-house to drive down costs. 'Maybe on the government side, [Lockheed Martin is thinking] that's where we need to be more vertically integrated to better compete over time against these companies coming into our market who are demonstrating real cost savings through their vertical integration,' Herbert said."

55.    Clearly, while the deal will be beneficial to Lockheed Martin it comes at great expense to Plaintiff and other public stockholders of the Company.

56.    Moreover, post-closure, Aerojet Rocketdyne stockholders will be frozen out of any future benefit from their investment in Aerojet Rocketdyne's bright future.

57.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Lockheed Martin at the expense of Aerojet Rocketdyne stockholders, which clearly indicates that Aerojet Rocketdyne stockholders were not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

58.    The Merger Agreement contains certain provisions that unduly benefit Lockheed Martin by making an alternative transaction either prohibitively expensive or otherwise impossible.  Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the Merger Agreement requires Aerojet Rocketdyne to pay up to $150 million to Lockheed Martin, if the Merger

CLASS ACTION COMPLAINT

Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Aerojet Rocketdyne must pay this termination fee even if it consummates any competing company Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

59.     The Merger Agreement also contains a "No Solicitation" provision that restricts Aerojet Rocketdyne from considering alternative acquisition proposals by, *inter alia*, constraining Aerojet Rocketdyne's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide written *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Offer*" as defined in the Merger Agreement.

60.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Lockheed Martin information in order to match any other offer, thus providing Lockheed Martin access to the unsolicited bidder's financial information and giving Lockheed Martin the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Lockheed Martin.

61.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

62.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

CLASS ACTION COMPLAINT

*Potential Conflicts of Interest*

63.     The breakdown of the benefits of the deal indicate that Aerojet Rocketdyne insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aerojet Rocketdyne.

64.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction as follows. Notably, while the Preliminary Proxy provides the following information, it fails to provide an accounting for how the consideration afforded to Company insiders for their large holdings.

| Beneficial Owner | Amount and Nature of Beneficial Ownership[1] | Percent of Class |
|---|---|---|
| *Non-Employee Directors* | | |
| Kevin P. Chilton[2] | 14,604 | * |
| Thomas A. Corcoran[3] | 105,231 | * |
| James R. Henderson[4] | 125,786 | * |
| Lance W. Lord[5] | 36,079 | * |
| Audrey A. McNiff[6] | 3,586 | * |
| Martin Turchin[7] | 120,145 | * |
| *Named Executive Officers* | | |
| Warren G. Lichtenstein[8] | 783,588 | 1.01% |
| Eileen P. Drake[9] | 412,084 | * |
| Daniel L. Boehle | 34,909 | * |
| Paul R. Lundstrom[10] | 110,160 | * |
| John D. Schumacher[11] | 96,370 | * |
| **All Directors and Executive Officers as a group (13 persons)** | **1,921,739** | **2.48%** |

65.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement. Despite this, and the Preliminary

- 16 -

CLASS ACTION COMPLAINT

Proxy indicating that Company Insiders currently hold over six hundred thousand shares of restricted stock alone, not to mention any other type of equity award, the document provides no accounting whatsoever of the ownership of these equity awards or the consideration set to be received by the Company insiders that own them as a result of the consummation of the Proposed Transaction.

66.    Further, certain employment agreements with certain Aerojet Rocketdyne executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Aerojet Rocketdyne common stockholders.  Notably these payments will be granted to Company insiders as follows:

| Name[1] | Cash($)[2] | Equity Award Vesting ($)[3] | Perquisites / benefits ($)[4] | Total Payments ($) |
|---|---|---|---|---|
| Warren G. Lichtenstein | 3,900,000 | 15,792,563 | — | 19,692,563 |
| Eileen P. Drake | 5,600,096 | 17,917,257 | 50,240 | 23,567,592 |
| Daniel L. Boehle | 1,677,140 | 1,929,048 | 50,166 | 3,656,355 |
| John D. Schumacher | 1,395,330 | 4,124,733 | 16,235 | 5,537,533 |

67.    Moreover, the Recommendation Statement is silent as to any post-close employment agreements Company insiders may have signed with Lockheed Martin.

68.    Thus, while the Proposed Transaction is not in the best interests of Aerojet Rocketdyne stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy*

69.    On January 25, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation of the Exchange Act and their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information

available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

70.     The Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

a.   Whether Companies A, C, D, and E were contacted by the Board and invited to participate in the sales process;

b.   Why the no additional outreach or market check was conducted;

c.   Why the Board accepted the $56.00 per share offer after reiterating for several months a floor price of $60.00 per share;

d.   Why no disinterested committee of independent directors was created to run the sales process;

e.   Whether the Company entered into any confidentiality agreements with any other party besides Lockheed Martin relating to the sales process, and if so, whether the terms of that agreement differed from the one with Lockheed Martin, and in what way;

f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Lockheed Martin, would fall away;

g.   Adequate information on the background of the decision to expand the company Board and appoint Defendant McNiff, including whether the decision was the result of an agreement with an activist shareholder, and if Defendant McNiff's appointment had an effect on the ongoing sales process, and if so, the nature of that effect;

- 18 -
CLASS ACTION COMPLAINT

h. Why the retention of multiple financial advisors was necessary, given that both Citi and Evercore will receive $15 million apiece for their services related to the Proposed Transaction;

i. Adequate information regarding the additional financial advisors referenced besides Citi and Evercore but not specifically named, including information regarding:

    i. The identities of the not specifically named financial advisor(s) referenced;

    ii. What the specific role of the not specifically named financial advisor(s), was in the sales process;

    iii. The analyses performed by the not specifically named financial advisor(s), in connection with the Proposed Transaction;

    iv. How much compensation the not specifically named financial advisor(s) were entitled to or has already received in compensation for its services throughout the sales process;

    v. The amount of compensation owed to the not specifically named financial advisor(s), contingent upon the consummation for the Proposed Transaction;

    vi. Whether the not specifically named financial advisor(s), have performed past services for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services, and the amount of compensation received by each financial advisor for providing such services; and

j. To adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be

CLASS ACTION COMPLAINT

disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Aerojet Rocketdyne's Financial Projections*

71. The Preliminary Proxy fails to provide material information concerning financial projections provided and/or adjusted by Aerojet Rocketdyne management and relied upon by Citi and Evercore in their analyses. The Preliminary Proxy discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

72. The Preliminary Proxy indicates that in connection with the rendering of Citi's fairness opinion, Citi reviewed the Aerojet Rocketdyne "Base Case Forecast and the Adjusted Base Case Forecast". Similarly, the Preliminary Proxy indicates that in connection with the rendering of Evercore's fairness opinion, Evercore reviewed, "certain internal projected financial data relating to Aerojet Rocketdyne prepared and furnished to Evercore by management of Aerojet Rocketdyne, as approved for Evercore's use by Aerojet Rocketdyne, including the Base Case Forecast and the Adjusted Base Case Forecast."

73. Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Aerojet Rocketdyne management provided to the Board, Citi, and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

CLASS ACTION COMPLAINT

74. With respect to the "Base Case Forecast," the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. EBITDA, including the underlying metrics of operating income, depreciation and amortization; and

    b. Unlevered Free Cash Flow, including the underlying metrics of capital expenditures, taxes, and adjustments related to changes in working capital and estimated pension and other postemployment benefits contributions.

75. With respect to the "Citi Adjustments in Respect of the Base Case Forecast," the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. Adjusted EBITDA, including the underlying metrics of EBITDA attributable to Aerojet Rocketdyne real estate segment and income/(expense) related to re-measurement of net environmental remediation asset/liability; and

    b. Adjusted Unlevered Free Cash Flow, including the underlying metrics of Cost Accounting Standards recoveries, capital expenditures, cash taxes, changes in net working capital, other operating adjustments, cash flows associated with Aerojet Rocketdyne real estate segment, cash pension and other postemployment benefits contribution payments, and cash flows associated with environmental liabilities.

76. With respect to the "Evercore Adjustments in Respect of the Base Case Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. Adjusted EBITDA, including the underlying metrics of EBITDA attributable to Aerojet Rocketdyne real estate segment and income/(expense) related to re-measurement of net environmental remediation liability; and

    b. Adjusted Unlevered Free Cash Flow, including the underlying metrics of Cost Accounting Standards recoveries, capital expenditures, taxes, changes in net working capital and certain adjustments relating to stock-based compensation and other operating adjustments.

CLASS ACTION COMPLAINT

77.     With respect to the "Adjusted Base Case Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

      a.  EBITDA, including the underlying metrics of operating income, depreciation and amortization; and

      b.  Unlevered Free Cash Flow, including the underlying metrics of capital expenditures, taxes, and adjustments related to changes in working capital and estimated pension and other postemployment benefits contributions.

78.     With respect to the "Citi Adjustments in Respect of the Adjusted Base Case Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

      a.  Adjusted EBITDA, including the underlying metrics of EBITDA attributable to Aerojet Rocketdyne real estate segment and income/(expense) related to re-measurement of net environmental remediation asset/liability; and

      b.  Adjusted Unlevered Free Cash Flow, including the underlying metrics of Cost Accounting Standards recoveries, capital expenditures, cash taxes, changes in net working capital, other operating adjustments, cash flows associated with Aerojet Rocketdyne real estate segment, cash pension and other postemployment benefits contribution payments, and cash flows associated with environmental liabilities.

79.     With respect to the "Evercore Adjustments in Respect of the Adjusted Base Case Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics

      a.  Adjusted EBITDA, including the underlying metrics of EBITDA attributable to Aerojet Rocketdyne real estate segment and income/(expense) related to re-measurement of net environmental remediation liability; and

      b.  Adjusted Unlevered Free Cash Flow, including the underlying metrics of Cost Accounting Standards recoveries, capital expenditures, taxes, changes in net

CLASS ACTION COMPLAINT

working capital and certain adjustments relating to stock-based compensation and other operating adjustments.

80. With respect to the "Risk Adjusted Case Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. EBITDA, including the underlying metrics of operating income, depreciation and amortization; and

    b. Unlevered Free Cash Flow, including the underlying metrics of capital expenditures, taxes, and adjustments related to changes in working capital and estimated pension and other postemployment benefits contributions.

81. With respect to the "Management Presentation Forecast", the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. EBITDA, including the underlying metrics of operating income, depreciation and amortization; and

    b. Unlevered Free Cash Flow, including the underlying metrics of capital expenditures, taxes, and adjustments related to changes in working capital and estimated pension and other postemployment benefits contributions.

82. The Preliminary Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

83. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

84. Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Aerojet Rocketdyne are unable to properly evaluate the Company's true worth, the merger consideration's true value, the accuracy of Citi and Evercore's financial analyses, or make an informed decision whether to vote their Company stock in favor of the

CLASS ACTION COMPLAINT

Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

85.    In the Preliminary Proxy, Citi describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

86.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

a. The range of estimated terminal values for Aerojet Rocketdyne calculated under each forecast;

b. The specific inputs and assumptions used to calculate the perpetuity growth rates of 2.0% and 3.0% utilized;

c. The estimated present values of the projected cash flows under each forecast utilized;

d. The specific inputs and assumptions used to calculate the applied discount rate range of 7.8% to 9.0%;

e. Aerojet Rocketdyne's weighted average cost of capital;

f. Aerojet Rocketdyne's net debt and other as of September 30, 2020 (including all underlying values of debt, in-the-money convertible debt, the tax-effected net present value of net Cost Accounting Standards ("CAS") reimbursements and cash pension contributions/other post-employment benefits ("OPEB") payments, cash, cash equivalents, a range of tax-effected net present values of real estate cash flows and reported net environmental asset/(liability));

g. The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis;

- 24 -

CLASS ACTION COMPLAINT

h. The specific inputs and assumptions utilized by Aerojet Rocketdyne management in determining the 2.7% after tax cost of debt rate utilized in the net present value of net CAS reimbursements and cash pension contributions/OPEB payments analysis; and

i. The specific inputs and assumptions utilized by Aerojet Rocketdyne management in determining the 0.0% perpetuity growth rate utilized in the net present value of net CAS reimbursements and cash pension contributions/OPEB payments analysis;

87. With respect to the *Present Value of Future Share Price Analysis*, the Preliminary Proxy fails to disclose the following:

a. The illustrative one year forward adjusted firm value utilized;

b. The specific inputs and assumptions utilized to calculate the Adjusted EBITDA multiples of 9.5x to 10.9x;

c. Aerojet Rocketdyne's net debt and other as of September 30, 2020 (including all underlying values of debt, in-the-money convertible debt, the tax-effected net present value of net Cost Accounting Standards ("CAS") reimbursements and cash pension contributions/other post-employment benefits ("OPEB") payments, cash, cash equivalents, a range of tax-effected net present values of real estate cash flows and reported net environmental asset/(liability));

d. The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis;

e. The specific inputs and assumptions used to calculate the discount rate of 8.7% utilized; and

f. Aerojet Rocketdyne's cost of equity.

88. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy fails to disclose the following:

CLASS ACTION COMPLAINT

a. The specific inputs and assumptions used to calculate the illustrative range of firm value to calendar year 2021 EBITDA multiples 11.2x to 13.2x utilized;

b. Aerojet Rocketdyne's net debt and other as of September 30, 2020 (including all underlying values of debt, in-the-money convertible debt, the tax-effected net present value of net Cost Accounting Standards ("CAS") reimbursements and cash pension contributions/other post-employment benefits ("OPEB") payments, cash, cash equivalents, a range of tax-effected net present values of real estate cash flows and reported net environmental asset/(liability)); and

c. The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis.

89. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a. The value of each selected transaction;

b. The date when each selected transaction closed; and

c. The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis.

90. With respect to the Wall Street research analysts' one-year forward price targets analysis, the Preliminary Proxy fails to disclose the following:

a. The specific price targets used; and

b. The identity of the Wall Street analysts used.

91. These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

92. Without the omitted information identified above, Aerojet Rocketdyne public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Aerojet Rocketdyne public stockholders cannot

- 26 -
CLASS ACTION COMPLAINT

gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

93.     In the Preliminary Proxy, Evercore describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

94.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

   a.   The terminal values for Aerojet Rocketdyne calculated under each forecast;

   b.   The specific inputs and assumptions used to calculate the perpetuity growth rates of 2.0% and 3.0% utilized;

   c.   The specific inputs and assumptions used to calculate the applied discount rate range of 7.50% to 8.75%;

   d.   Aerojet Rocketdyne's estimated weighted average cost of capital;

   e.   Aerojet Rocketdyne's total debt (excluding convertible notes);

   f.   Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and cash used to repurchase shares since September 30, 2020 per Aerojet Rocketdyne's management);

   g.   Aerojet Rocketdyne's net environmental asset position resulting from government and other reimbursements that Aerojet Rocketdyne management projects will more than fully offset Aerojet Rocketdyne's payments related to its environmental remediation liabilities as of September 30, 2020;

CLASS ACTION COMPLAINT

h.  Aerojet Rocketdyne's present value of forecast cash contributions to fund pension liabilities, net of federal government reimbursement for certain pension expenses, for fiscal years 2021 through 2029;

i.  Aerojet Rocketdyne's average estimated present value of real estate; and

j.  Aerojet Rocketdyne's number of fully diluted shares of Aerojet Rocketdyne common stock.

95.  With respect to the *Selected Public Company Trading Analysis – Base Case Forecast*, the Preliminary Proxy fails to disclose the following:

a.  The specific inputs and assumptions used to calculate the enterprise value/Adjusted EBITDA multiples of 10.0x – 12.0x applied to Aerojet Rocketdyne's estimated fiscal year 2021 Adjusted EBITDA;

b.  The specific inputs and assumptions used to calculate the enterprise value/Adjusted EBITDA multiples of 9.0x – 11.0x applied to Aerojet Rocketdyne's estimated fiscal year 2022 Adjusted EBITDA;

c.  The specific inputs and assumptions used to calculate the price/EPS multiples of 14.0x – 17.0x and applied this range of multiples to Aerojet Rocketdyne's estimated fiscal year 2021 EPS; and

d.  The specific inputs and assumptions used to calculate the price/EPS multiples of 13.0x – 16.0x and applied this range of multiples to Aerojet Rocketdyne's estimated fiscal year 2022 EPS.

96.  With respect to the *Selected Public Company Trading Analysis – Adjusted Base Case Forecast*, the Preliminary Proxy fails to disclose the following:

a.  The specific inputs and assumptions used to calculate the enterprise value/Adjusted EBITDA multiples of 10.0x – 12.0x applied to Aerojet Rocketdyne's estimated fiscal year 2021 Adjusted EBITDA;

CLASS ACTION COMPLAINT

b. The specific inputs and assumptions used to calculate the enterprise value/Adjusted EBITDA multiples of 9.0x – 11.0x applied to Aerojet Rocketdyne's estimated fiscal year 2022 Adjusted EBITDA;

c. The specific inputs and assumptions used to calculate the price/EPS multiples of 14.0x – 17.0x and applied this range of multiples to Aerojet Rocketdyne's estimated fiscal year 2021 EPS; and

d. The specific inputs and assumptions used to calculate the price/EPS multiples of 13.0x – 16.0x and applied this range of multiples to Aerojet Rocketdyne's estimated fiscal year 2022 EPS.

97. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a. The value of each selected transaction;

b. The date when each selected transaction closed; and

c. Aerojet Rocketdyne's total debt (excluding convertible notes);

d. Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and cash used to repurchase shares since September 30, 2020 per Aerojet Rocketdyne's management);

e. Aerojet Rocketdyne's net environmental asset position resulting from government and other reimbursements that Aerojet Rocketdyne management projects will more than fully offset Aerojet Rocketdyne's payments related to its environmental remediation liabilities as of September 30, 2020;

f. Aerojet Rocketdyne's present value of forecast cash contributions to fund pension liabilities, net of federal government reimbursement for certain pension expenses, for fiscal years 2021 through 2029;

g. Aerojet Rocketdyne's average estimated present value of real estate; and

h. Aerojet Rocketdyne's number of fully diluted shares of Aerojet Rocketdyne common stock.

CLASS ACTION COMPLAINT

98.     With respect to the *Equity Research Analyst Price Targets* analysis, the Preliminary Proxy fails to disclose the following:

    a.  The specific price targets used; and

    b.  The identity of the Wall Street analysts used

99.     With respect to the *Illustrative Present Value of Future Share Price* analysis, the Preliminary Proxy fails to disclose the following:

    a.  The specific inputs and assumptions used to calculate the range of illustrative price-to-earnings ratios of 20.6x to 22.6x;

    b.  The specific inputs and assumptions used to calculate the applied discount rate range of 8.25% to 9.25%; and

    c.  Aerojet Rocketdyne's cost of equity.

100.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

101.     Without the omitted information identified above, Aerojet Rocketdyne public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Aerojet Rocketdyne public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

### FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

102.     Plaintiff repeats all previous allegations as if set forth in full herein.

103.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

- 30 -

104.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Aerojet Rocketdyne.

105.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Aerojet Rocketdyne by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Aerojet Rocketdyne to its public stockholders.

106.    Indeed, Defendants have accepted an offer to sell Aerojet Rocketdyne at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

107.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

108.    The Individual Defendants dominate and control the business and corporate affairs of Aerojet Rocketdyne, and are in possession of private corporate information concerning Aerojet Rocketdyne's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Aerojet Rocketdyne which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

109.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

110.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Aerojet Rocketdyne's assets and have been and will be prevented from obtaining a fair price for their common stock.

CLASS ACTION COMPLAINT

111. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

112. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant Aerojet Rocketdyne, Inc.

113. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

114. Defendant Aerojet Rocketdyne, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

115. As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

116. Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

117. Plaintiff repeats all previous allegations as if set forth in full herein.

118. Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

119. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

CLASS ACTION COMPLAINT

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

120. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

121. The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

122. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

CLASS ACTION COMPLAINT

123. The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

124. The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Individual Defendants)

125. Plaintiff repeats all previous allegations as if set forth in full herein.

126. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

127. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary

CLASS ACTION COMPLAINT

Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

128. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Aerojet Rocketdyne's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

129. The Individual Defendants acted as controlling persons of Aerojet Rocketdyne within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Aerojet Rocketdyne to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Aerojet Rocketdyne and all of its employees. As alleged above, Aerojet Rocketdyne is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B. Enjoining the Proposed Transaction;

C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

CLASS ACTION COMPLAINT

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Aerojet Rocketdyne and obtain a transaction which is in the best interests of Aerojet Rocketdyne and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 29, 2020

**BRODSKY & SMITH, LLC**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 36 -
CLASS ACTION COMPLAINT